UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JOSHUA YOUNG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:25-cv-02191-GCS** |
| | ) | |
| **LATOYA HUGHES and CHAD JENNINGS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

## INTRODUCTION

Pending before the Court is Defendant Latoya Hughes's motion for summary judgment on the issue of failure to exhaust administrative remedies. (Doc. 19, 20, 25, 26).[1] Plaintiff Joshua Young filed a response in opposition. (Doc. 22). For the reasons set forth below, the Court denies the motion for summary judgment.

## BACKGROUND

Plaintiff Joshua Young is an inmate in the Illinois Department of Corrections ("IDOC"), who is currently incarcerated at Robinson Correctional Center ("Robinson").

[1] Along with the motion for summary judgment, Defendant Hughes filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment and what is required in responding to a motion for summary judgment. (Doc. 21).

Plaintiff alleges deprivation of his constitutional rights via the failure of prison staff to provide safe drinking water for several years. (Doc. 7, p. 2). Young alleges the drinking water at Robinson was contaminated. He specifically alleges that the water was a dark, brown color or a "white milky" color from August 26-29, September 6-9, and November 10-14, 2024. (Doc. 7, p. 2). Plaintiff alleges Defendant Hughes was aware of the water contamination via the numerous grievances he filed during the relevant time period, as well as documentation from the Illinois Environmental Protection Agency ("EPA"). Plaintiff alleges on September 17, 2025, Defendant Hughes stated in response to a grievance that there had not been a boil order since April of 2024, when in fact the Illinois EPA issued a boil order from April 11-26, 2025. (Doc. 7, p. 2-3). In support of his Amended Complaint, Plaintiff included grievances including the September 2025 response that Defendant Hughes signed, stating that there had not been a boil order since April 2024. In addition to supporting his initial lawsuit, Plaintiff provided documentation from the Illinois EPA showing that Robinson was bound by a Compliance Commitment Agreement intended to address issues with their water system throughout 2023 and 2024. (Doc. 7, p. 3).

After screening, the Court permitted Plaintiff to proceed with the following claims:

Claim 1: Eighth Amendment deliberate indifference claim against Defendant Jennings for failing to remedy water issues at Robinson as alleged in the Amended Complaint in 2024 and 2025;

Claim 2: Eighth Amendment deliberate indifference claim against Defendant Hughes for failing to investigate or remediate the water issues at Robinson in 2024 and 2025.

(Doc. 7). The Court notes that this Memorandum & Order only addresses whether

Plaintiff exhausted his administrative remedies regarding his claim against Defendant Hughes.

Defendant Hughes argues Plaintiff failed to exhaust his administrative remedies, by failing to name Defendant Hughes in any grievance related to this lawsuit prior to commencement of this lawsuit. Plaintiff opposes the motion arguing that Defendant Hughes, as Director of the IDOC, had knowledge of his claims via the many grievances he filed regarding the brown water as she signed off on the final decisions of the grievances.

## FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

The Court considers the following four grievances referenced in the motion for summary judgment.

**Grievance #K42-0824-1703**

Plaintiff filed grievance #K42-0824-1703 on August 27, 2024, marking staff conduct and alleging the drinking water was brown and "milky white." Plaintiff states he was never informed by Robinson staff or administration of any issue. (Doc. 20-1, p. 9-10). The grievance does not specially name Defendant Hughes. On October 16, 2024, this grievance was reviewed and recommended to be denied by the grievance officer stating: "[p]er Chief Engineer Schmitt response and in accordance with DR504F this is a duplicate grievance." *Id*. at p. 8. The Chief Administrative Officer ("CAO") concurred on October 21, 2024. Plaintiff appealed the grievance to the Administrative Review Board ("ARB")

on October 31, 2024. *Id*. On March 22, 2025, the ARB denied Plaintiff's grievance as it was appropriately addressed by the first level response, camera footage requests were reviewed and answered, requests for additional dates were submitted to the appropriate staff, and the grievant had access to medical treatment. *Id*. at p. 7. Defendant Hughes, as Director of the IDOC, concurred with the ARB's decision. *Id.*

**Grievance #K42-0924-1175**

Plaintiff filed grievance #K42-0924-1175 on September 8, 2024, alleging the drinking water was once again brown on September 6,-7, 2024, and he was not notified by staff or received any substitute water. (Doc. 20-1, p. 12-13). Plaintiff does not specially name Defendant Hughes in this grievance. On October 16, 2024, the grievance officer reviewed and recommended the grievance be denied as a duplicate grievance in compliance with DR504F. The CAO concurred on October 21, 2024. Plaintiff appealed the grievance to the ARB on October 31, 2024. *Id*. at p. 11. On March 22, 2025, the ARB denied Plaintiff's grievance as it was appropriately addressed by the first level response, camera footage requests were reviewed and answered, requests for additional dates were submitted to the appropriate staff, and the grievant had access to medical treatment. *Id* at p. 7. Defendant Hughes concurred with the ARB's decision. *Id.*

**Grievance #K42-0924-1785**

On September 12, 2024, Plaintiff filed grievance #K-42-0924-1784 reporting that he was having medical issues due to the drinking water at Robinson. This grievance does not name Defendant Hughes. (Doc. 20-1, p. 17, 18). The grievance officer recommended the grievance be denied stating: "[p]er HCUA P. Martin response, medications have arrived and will be issued. Medical Records will be available for pickup. Chief Engineer

indicated there have been no water issues as the daily test results are good. Individual can follow up on Nurse Sick Call per AD 04.03.103." *Id*. at p. 16. The CAO concurred on October 18, 2024, and Plaintiff appealed to the ARB on October 31, 2024. *Id*. The ARB issued a decision regarding the grievance on March 22, 2025. Specifically, the ARB held: "[a]ffirmed – Facility staff confirmed medications had to be re-ordered. Moot – Per G/O Hurley, records were going to be provided as requested. Denied – Per the Chief Engineer, there were no water issues. Request for camera footage was sent to the appropriate staff, please submit a request slip to IA for future requests. Mixed." *Id*. a p. 15. Defendant Hughes concurred. *Id.*

**Grievance #K42-1124-2285**

Plaintiff filed grievance #K42-1124-2285 on November 14, 2024, alleging the drinking water turned brown, the ice machine had to be turned off, and the laundry room door had a sign stating water was brown. Plaintiff requested to be transferred to a different facility. (Doc. 20-1, p. 4-5). The grievance does not name Defendant Hughes. On February 19, 2025, the grievance officer reviewed the grievance and recommended the grievance be mixed, partially affirmed. The grievance officer recommended: "[w]ater at Robinson CC is tested twice daily and monitored to ensure safe and clean water is provided. However, the grievance process is not utilized to request a transfer. Please see your counselor to request a transfer." *Id*. at p. 3. Plaintiff appealed the grievance to the ARB. On September 17, 2025, the Plaintiff's grievance was denied by the ARB as it was properly addressed by facility administration. The ARB also stated: "[a]n email was sent to the appropriate staff regarding camera footage request. Per the Chief Engineer, Robinson/Palastine water district has not had a boil order since 4/2024. If there is an

issue with the city water supply, they should be notified. *Id*. at p. 2. Defendant Hughes concurred with the ARB. *Id.*

Plaintiff filed suit on December 16, 2025. (Doc. 5).

## LEGAL STANDARDS

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)); FED. R. CIV. PROC. 56(a). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Williams v. Rajoli,* 44 F.4th 1041, 1045 (7th Cir. 2022) (noting that "[w]e take a strict compliance approach to exhaustion.") (citations omitted). Exhaustion must occur before the suit is filed. *See Chambers v. Sood*, 956 F.3d 979, 981 (7th Cir. 2020); *Williams*, 44 F.4th at 1043. A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *Chambers*, 956 F.3d at 983; *Jackson v. Esser*, 105 F.4th 948, 956 (7th Cir. 2024). Consequently,

if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Maddox v. Love,* 655 F.3d 709, 721 (7th Cir. 2011) (citations omitted). The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Hacker v. Dart,* 62 F.4th 1073, 1084 (7th Cir. 2023).

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008); *Jones v. Lamb*, 124 F.4th 463, 469 (7th Cir. 2024). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey,* 544 F.3d at 742 (7th Cir. 2008); *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015).

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint[,] or grievance has not been

resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievance "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## DISCUSSION

For the reasons below, the Court finds that the Defendant Hughes has failed to demonstrate that Plaintiff did not exhaust his administrative remedies, and the Court denies the motion for summary judgment. Failure to exhaust is an affirmative defense under the Federal Rules. *See Jones v. Bock*, 549 U.S. 199, 212 (2007).

Defendant Hughes argues that the Plaintiff failed to exhaust his administrative remedies as to the claims against her by excluding her name and by not alleging a failure to investigate or remediate the alleged water issues in any of the grievances he filed. The purpose of a grievance is to alert prison officials to a problem so that action can be taken to remedy the problem. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). *See also Schillinger v. Kiley*, 954 F.3d 990, 995-996 (7th Cir. 2020) (holding that a prisoner satisfies the exhaustion requirement by giving prison officials "notice of, and an opportunity to correct, a problem"). Thus, an inmate's grievance is sufficient to exhaust a claim if it raises the same claim as the lawsuit and provides enough information to indicate the defendant is the target. *See King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023). An inmate cannot rely on a grievance to exhaust a claim if there is a "disconnect between the grievance and complaint." *Bowers v. Dart*, 1 F.4th 513, 517 (7th Cir. 2021). "Accordingly, assuming a prisoner takes all the administrative steps, his complaint will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought." *Jackson v. Esser*, 105 F.4th 948, 959 (7th Cir. 2024) (quotation marks omitted).

As demonstrated in Plaintiff's various grievances, he describes the water contamination on numerous occasions and alleges that there were no corrections made or accommodations for him during this time period. (Doc. 20-1). Regardless of the naming

dispute, the record shows that Defendant Hughes, as Director of the IDOC, personally reviewed the ARB's findings and signed off on the final denials of all the grievances attached. Because Defendant Hughes personally reviewed and ruled on Plaintiff's grievance, Defendant Hughes had been made aware of Plaintiff's complaint and had the opportunity to address the situation.

Further, the Plaintiff is not required to file successive grievances raising the same issue if the conduct continues. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Thus, Plaintiff did not need to file a separate grievance specifically for naming Defendant Hughes for failing to act in response to the grievances filed on the same topic. The possibility of Defendant Hughes's involvement is not refuted by the argument that Defendant Hughes is not named in the Plaintiff's grievances. Further, the fact that Plaintiff filed multiple grievances about the ongoing water contamination indicates that there was a lack of investigation/remediation as to the water issues at Robinson. Because Defendant Hughes personally reviewed and denied grievances concerning the same subject matter as Plaintiff's claim, summary judgment on the exhaustion of administrative remedies is not warranted.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 19).

**IT IS SO ORDERED.**

**DATED: August 20, 2026.**

Gilbert C Sison

Digitally signed by Gilbert C Sison
Date: 2026.08.20 14:04:45 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**